[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO RECONSIDER, MOTION TO AMEND, AND MOTION TO VACATE ORDER OF TEMPORARY CUSTODY
BACKGROUND:
On October 5, 1993, the Department of Children and Families (DCF), submitted to this court an application for Order of Temporary Custody (OTC) regarding the two above-named juveniles.
On that date, after a review of the supporting documentation, the court granted an ex parte order of temporary custody and assigned the matter for an immediate hearing pursuant to Sec.46b-129(b), C.G.S.
The parties subsequently agreed to "consolidate" the OTC hearing with the hearing on the underlying petitions which alleged that said juveniles had been "abused", "neglected" and "uncared for" by their parents. The petitions seek a commitment of each of the juveniles to DCF.
To date, trial on the OTC and the petitions has consumed over 25 trial sessions and has gone on for almost one calendar year.
On July 11, 1994, the court entered orders regarding the CT Page 8933 Motion To Dismiss filed by the respondent parents. The court dismissed the allegations in the petitions sounding in abuse and neglect. It did not dismiss the allegation that the children were uncared for, as that term is defined by statute.
On August 15, 1994, counsel for the children filed a Motion To Reconsider, moving the court to restore to the petitions the allegations of abuse and neglect which it previously dismissed.
On August 19, 1994, DCF, through its counsel filed a Motion to Amend, adding to the "uncared for" allegation in each petition the claim that the "child is also uncared for in that her home cannot provide the specialized care which her mental or emotional condition requires." It also sought to amend in several ways the "to wit" clause in each petition and to add to each petition an addendum to the Affidavit and Summary of Facts.
On August 30, 1994, the respondents filed a Motion To Vacate the Order of Temporary Custody dated October 5, 1994.
The effect of granting the Motions to Reconsider and to Amend will be to allow the petitioner and the juveniles to assert every allegation available to them under the statute. The trial of those issues will assuredly continue for a considerably extended period of time, based upon the trial progress to date and given the extremely limited trial dates available under current court schedules.
The inevitable addition to trial time does not, however, permit or justify the summary denial of the relief requested in those motions.
The effect of granting the relief sought in the respondents' Motion To Vacate Order of Temporary Custody would be the revocation of the temporary commitment and the termination of the guardianship and control over the child by the Commissioner in favor of the parents.
Having considered the reciprocal consequences of the relief sought in the aforementioned motions, the court makes the following findings and orders.
Motion To Reconsider CT Page 8934
In support of their motion, counsel for the juveniles presented the court with an unrelenting yet cogent oral argument pointing out the court's failure to focus on the conditions of the child rather than the acts of the parents when it dismissed the allegations of abuse and neglect from the petitions.
"Abused" means that a child or youth is in a condition
which is the result of maltreatment such as . . .emotional maltreatment or cruel punishment (emp. added). Sec. 46b-120(c).
"Neglected" means a child who has been (i) abandoned or (ii) is being denied proper care and attention, physically, educationally emotionally or morally or (iii) is being permitted to live under conditions, circumstances or associations injurious to his well-being (emp. added). Sec 46b-120, C.G.S.
The condition of the child is the requirement which the petitioner must establish and is the only legal measurement for determining the need for commitment.
The acts or omissions of the parents which once were the criteria for determining abuse and neglect are no longer the determining factor. No matter how well intentioned or highly motivated parental acts may be, they cannot and should not have been the basis for the court's ruling that the State, as a matter of law, failed to set out a prima facie case of abuse and neglect. The parents need not be found personally at fault before a court can make a finding, however preliminarily, of abuse and neglect.
For the reasons stated hereinabove, the court, upon reconsideration of its previous orders, vacates the order dismissing the allegations of "abuse" and "neglect" and restores those allegations to each of the petitions.
To the extent that the respondents can show that they have been prejudiced by this ruling as it effects their right to refute or offer evidence and testimony during previous trial dates, the court will revisit such testimony.
MOTION TO AMEND
Practice Rule Sec. 1055.1 provides that amendments may be made to a petition at any time prior to judgment at the discretion of the court. Criteria for permitting an amendment CT Page 8935 are essentially designed to prevent "trial by ambush" while still permitting the parties to present to the court all relevant and timely issues so as to allow an equitable and proper decision.
The court disagrees with the respondents' contention that the issues and facts which the petitioner seeks to add to the pleadings are "unseasonable" or "unfair and prejudicial". They do not introduce a new cause of action, but rather seek to elaborate on the specific allegation of "uncared for" which has been a part of the petitions since they were returned to the court almost one year ago. The additional amendments are to offer a factual basis for such allegations.
For the foregoing reasons, the court grants the petitioner's Motion To Amend.
MOTION TO VACATE ORDER OF TEMPORARY CUSTODY
The history of the orders of temporary custody in these cases are set forth above.
In their August 30, 1994, motion, the respondents claim that the Petitioner has no legal right to the custody of said children.
Their argument is based on the assertion that their daughters do not presently and never have suffered from "serious physical injury", ["]serious physical illness" and that they are not now, nor have they ever been, subjected to "immediate physical danger.", which the respondents assert are the only statutory criteria permitting state intervention as set forth in Sec. 17-101, C.G.S.
This court agrees with the respondents that state intervention in families must be limited to cases where the state interest Commissioner is immediately necessary to ensure the child's safety. Roe vs. Wade[,] 410 U.S. 113 (1973).
Having become familiar with the evidence and testimony in these cases beginning with the facts alleged in the ex parte application for OTC and continuing with the extensive testimony throughout the trial, the court cannot agree with the respondents' perspective that there is no need for the temporary custody of the juveniles involved during the pendency of the CT Page 8936 trial.
The issues in these cases came to the state's attention on September 5, 1993, when the two juveniles were presented at Danbury Hospital and refused to return to their parents home. They have not been home since.
The court has heard extremely compelling testimony from several witnesses and from the juveniles themselves that they not only do not want to be returned to the custody or control of their parents, but further, that they will resists all attempts to return them and will immediately and repeatedly run away from that home if ordered to return there.
There has been further testimony that the reason for their running is their emotional frailty and the lengths to which they are prepared to go to obtain protection from exposure to the influence and control of their parents. See In Re Juvenile Appeal (1983-4) 39 Conn. Sup. 490, 493 (1983).
The court finds that to return these juveniles to their parents at this time would be to place them in immediate physical danger. While the court finds that they have the unmitigated resolve not to return to their parents and the savvy to know that the residences of friends, neighbors and relatives will not afford them extended shelter, they are in all other respects ill prepared to fend for themselves in the community at large as teen-age girl runaways. The dangers to teen-age runaways needs no detailed discussion.
The court is aware that interference with parental rights cannot be based upon mere speculation that specific acts "are reasonably certain to occur." In Re Kelly S.,29 Conn. App. 600 (1992).
The acts which cause concern to this court are the acts of the juveniles themselves and not of the parents as was the case in Kelly S.
This court finds that the provisions of Sections 46b-129(b) and 17-101, C.G.S., have been met and that the state has established by a fair preponderance of the evidence that there exists a compelling state interest to intervene on behalf of the two juveniles and that the assumption of temporary custody by the Commissioner is in the best interests of the juveniles CT Page 8937 and is necessary to insure their safety.
The Motion To Vacate Order of Temporary Custody is denied and the juveniles are to remain in the custody of the Department of Children and Families until further order of the court.
By the Court, Joseph W. Doherty, J.